**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PHILLIP E. CARROLL and | ) | |
| DENISE M. CARROLL, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 09-cv-06595 |
| | ) | |
| v. | ) | Judge Andrea R. Wood |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Phillip Carroll and Denice Carroll have alleged that they were injured in a car

accident caused by the negligent driving of Steven Atlas, a sergeant in the United States Army

who was driving a car in the course of his official duties. The Carrolls brought this claim against

the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346. The parties tried the

Carrolls' claims in a bench trial before the Court and now, for the reasons detailed below, the

Court enters judgment for the United States.

**TRIAL EVIDENCE**

The parties do not dispute that, on August 12, 2006, a car driven by Steven Atlas rear-

ended a car occupied by Denice and Phillip Carroll on Interstate 94 in Lake County, Illinois.

They also agree that at the time of the accident Atlas was driving a government-owned car in the

course of his employment as a recruiter for the United States Army. The Carrolls' complaint

alleges that the accident was caused by Atlas's negligence and the United States disputes that

allegation. The parties agreed to bifurcate liability and damages proceedings and presented the

liability issues in a two-day trial before this Court. The evidence presented at trial is summarized

as follows.

### *Testimony of Steven Atlas*

At trial, Atlas testified that, at the time of the accident, he was driving north on Interstate 94 on his way from a recruiting office in Des Plaines, Illinois to his department's headquarters. He had made the same drive more than 100 times and was in no hurry. He had no mechanical difficulties with the car and was not distracted as he drove. Atlas drove in the left lane of the highway. Traffic was stop-and-go. While driving at about 30 miles per hour, Atlas saw a dark Ford Mustang pass him on the highway shoulder on his left side. He estimated the Mustang's speed at 10 to 15 miles per hour faster than his own. According to Atlas, seconds after the Mustang passed him, it merged into his lane in front of him. He attempted to brake, but his car nonetheless collided with the rear of the Mustang.

### *Testimony of Denice and Phillip Carroll*

Denice Carroll testified at trial that, at the time of the accident, she and her husband Phillip were traveling from their home to a family party at a location to which neither of them had been previously. She was driving; her husband was in the passenger seat. The car was in the left lane. Denice did not drive on the shoulder. Her car was stopped for traffic and Phillip was on the phone trying to get directions to the party when they were hit from behind. The first time Denice saw the car that hit them was after the collision. Phillip Carroll also testified that he was talking to his son on the phone when the accident happened. He did not see the car that struck them until some time after the collision.

### *Testimony of Kary Sampson*

The United States presented trial testimony from Kary Sampson. At the time of the accident, Sampson was driving southbound on Interstate 94 in the left lane. He recalls the

weather as clear and dry. Sampson saw a car from the oncoming northbound lanes pull onto the

highway shoulder closest to him, pass cars, and then cut back into the left northbound lane. He

saw that the car was a Mustang and that it hit other cars as soon as it moved from the shoulder to

the left lane. Sampson did not remember details of how the colliding cars came into contact with

each other, but he was sure that the car that had driven on the shoulder was a Mustang. Sampson

pulled over onto the left shoulder of the southbound lanes and climbed over the median to the

northbound lanes to see if he could help the drivers involved in the crash. He then remained at

the scene to give police his account of the accident.

### *Expert Testimony of Shawn Gyorke*

Shawn Gyorke, an accident reconstruction expert, testified for the Carrolls. Prior to his

testimony, he examined photographs of the two cars after the crash but did not have the

opportunity to view the cars themselves. Gyorke concluded that Atlas's car, a Dodge Stratus, had

rear-ended the Carrolls' Mustang, and he estimated that the speed differential between the two

cars at the moment of impact was approximately 35 miles per hour. Gyorke testified that damage

to the cars indicated that the impact point was lower on the Carrolls' Mustang than on Atlas's

Stratus. He concluded from this difference that the nose of Atlas's car was shifted downward at

the time of the crash as the result of hard braking, but he also conceded that the results he saw

were also consistent with both cars braking hard at impact.

Gyorke had originally formed the opinion that Atlas had been driving on the shoulder,

but that opinion was based upon a reading of Sampson's deposition testimony. Gyorke had

understood Sampson to establish that the car that had been on the shoulder was the car that

struck a second vehicle; since his analysis showed that Atlas's Stratus rear-ended the Carrolls'

Mustang, he had concluded that Atlas had been the driver on the shoulder before the collision.

Gyorke later read Atlas's deposition testimony and learned that his account identified the Carrolls' Mustang as both the car on the shoulder and the car that was rear-ended. Gyorke ultimately testified at trial that his reconstruction analysis could not determine which of the parties' accounts of the collision was accurate.

### Expert Testimony of Michael Bracki

Michael Bracki testified for the defense as an accident reconstruction expert. He agreed that the evidence showed that the Stratus had rear-ended the Mustang. He concluded that the closing speed at the time of impact was 18 miles per hour and also that both cars were braking at the time of impact. Bracki observed that the contact between the vehicles was offset, with the Stratus to the left of the Mustang, and he conceded that if the Mustang had been on the left of the lane line and on the edge of the left shoulder at impact, the Stratus would have been in the shoulder. Neither expert suggested that the accident was related to any mechanical cause.

## DISCUSSION

The Court has considered the evidence presented, including the testimony of the witnesses listed above and the photographic evidence submitted by the parties. Based upon that evidence, the Court enters the conclusions of law and findings of fact below pursuant to Fed. R. Civ. P. 52.[1]

### Conclusions of Law

Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346, this Court has jurisdiction over this matter and the United States is the proper defendant. This action is governed by the substantive law of Illinois, the location of the alleged tortious act. *Del Raso v. United States,* 244

---

[1] The parties were directed to file proposed findings of fact and conclusions of law by July 29, 2014. The date for that filing was extended to August 12, 2014, with responses to be filed by August 26, 2014. The United States filed proposed findings of fact and conclusions of law on August 12. The Carrolls did not file proposals of their own or respond to those filed by the United States.

F.3d 567, 570 (7th Cir. 2001). Under Illinois law, a plaintiff bringing a claim for ordinary negligence must establish by a preponderance of the evidence that the defendant owed him a duty of care, that the defendant breached that duty, and that the plaintiff was injured as a proximate result of the breach. *Winters v. Fru-Con Inc.*, 498 F.3d 734, 746 (7th Cir. 2007). The mere fact that the defendant's car struck the plaintiff's car from behind is not sufficient to support an inference that the defendant drove negligently. *Black v. Laggren,* 313 Ill. App. 3d 39, 245 Ill. Dec. 851, 728 N.E.2d 1208, 1213 (2000); *Stone v. Lyons,* 178 Ill. App. 3d 448, 127 Ill. Dec. 561, 533 N.E.2d 433, 435, (1988).

### *Findings of Fact*

No credible evidence was presented to show that Atlas was driving negligently at the time of the collision. Neither Denice Carroll nor Phillip Carroll saw Atlas's car before the accident—each testified it was only after the collision that they first saw the car that had hit them. Their testimony establishes only that they were hit from behind, a fact which cannot by itself establish negligence under Illinois law. Expert testimony established only the possible speed differential between the two cars at impact. Neither expert suggested that he could determine Atlas's speed to have been unsafe.

The Carrolls' counsel attempted to establish at trial that, contrary to his testimony, Atlas had been driving on the shoulder immediately before the accident. Sampson saw the car on the shoulder swerve back into the left lane and strike cars there; since it is undisputed that Atlas's car struck the Carrolls' vehicle, their counsel asserted that it was the Dodge Stratus driven by Atlas that was on the shoulder, driving unsafely, immediately before the accident.

But Sampson's testimony about how the cars came into contact was equivocal. Asked what he saw after the car from the shoulder reentered the left lane, he said, "I'm not for sure

whether it hit the front or the rear of the car that it went between." (Test. of Kary Sampson, R. 101.) On cross examination, Sampson was asked how the two cars came together and what parts of the cars collided. He answered, "I'm not for sure if it was the front or the rear, but they just cut back in between, so I couldn't tell you if it hit the front of the car or hit the rear of the car. I honestly couldn't tell you." (*Id.* at 128.) Since Sampson was less than certain about how the cars came together, his testimony cannot support a conclusion that he firmly identified the car on the shoulder by its role as the initiator of the collision.

Although he was not sure exactly how the car from the shoulder came into contact with the other involved vehicle, Sampson did not equivocate on the identification of that car's model:

> Q: What kind of car did you see enter the shoulder?
>
> A: It was a dark color, either a black or a blue Mustang.
>
> Q: Are you certain it was a Mustang?
>
> A: Yes, sir.
>
> Q: How are you certain it was [a] Mustang?
>
> A: There's a pretty distinct body style to them, and I've got nephews;
> that's all they've ever had are Mustangs.

(*Id.* at 100.) Sampson's identification of the vehicle did not waver on cross examination:

> Q: So would you accept that you might have been mistaken in identifying
> the car at that particular time?
>
> A: No, sir. The car that came into that shoulder was a Mustang.
>
> Q: It was a Mustang, no matter what?
>
> A: Yes, sir.

(*Id.* at 117.)

In view of this testimony, the Court cannot conclude that Sampson saw Atlas's Dodge Stratus driving on the shoulder. Nor can it conclude that Sampson's testimony offers any proof that Atlas drove negligently. As noted above, no such proof can be derived from the testimony of either expert witness, and neither Denice Carroll nor Phillip Carroll saw Atlas before the collision. The only other evidence of Atlas's driving before the accident was the testimony of Atlas himself. Not surprisingly, that testimony does not suggest any deficiency in his level of care before the accident. In the absence of proof of Atlas's negligent driving, the Carrolls cannot prevail on their claim of negligence.

## CONCLUSION

Because the plaintiffs have not presented evidence to support a finding that Atlas was driving negligently at the time of the accident, the Court must find that they have failed to meet their burden of proof. Judgment will accordingly be entered for the United States.

ENTERED:

Dated:  March 31, 2016

_____
Andrea R. Wood
United States District Judge